AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

| | |
|---|---|
| Southern | **DISTRICT OF** | California |

<table>
<tr><td>

**In the Matter of the Search of**
(Name, address or brief description of person or property to be searched)

Express Mail Parcel #EB794472650US addressed to Baymont Inn Tre Roberts 5612 Lenox Ave Nashville TN 37209. The parcel has the return address information of Just Us 225 Bay Blvd Chula Vista CA 91910.

</td><td>

**APPLICATION AND AFFIDAVIT**

**FOR SEARCH WARRANT**

CASE NUMBER: '07 MJ 2818

</td></tr>
</table>

I,                Kelly E. Cain                being duly sworn depose and say:

I am a(n)        U. S. Postal Inspector                and have reason to believe
                 Official Title

that on the premises known as (name, description and/or location)

Express Mail Parcel #EB794472650US addressed to Baymont Inn Tre Roberts 5612 Lenox Ave Nashville TN 37209. The parcel has the return address information of Just Us 225 Bay Blvd Chula Vista CA 91910 which is in the custody of the U. S. Postal Inspection Service

in the Southern                                    District of California
there is now concealed property, namely (describe the person or property)

Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21                United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:

See attached.

Continued on the attached sheet and made a part hereof.        X Yes        ___No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

12/5/2007
_____
Date

RUBEN B. BROOKS
U.S. MAGISTRATE JUDGE
_____
U.S. Magistrate Judge
Name and Title of Judicial Officer

at    San Diego, CA
      City and State

_____
Signature of Judicial Officer

<u>AFFIDAVIT FOR SEARCH WARRANT</u>

I, Kelly E. Cain, being duly sworn hereby depose and state:

1.      I am a United States Postal Inspector currently assigned to the San Diego Field Office of

the Postal Inspection and my duties include investigating violations of the Drug Abuse

Prevention and Control Act.

2.      This affidavit is submitted in support of an application for a search warrant for the

following Express Mail Parcels:

      a)  The Express Mail Parcel #EB794472650US addressed to "Baymont Inn Tre Roberts

         5612 Lenox Ave Nashville TN 37209".  The parcel has the return address information

         of "Just Us 225 Bay Blvd Chula Vista CA 91910".

3.      I have been employed as a Postal Inspector since August 2006.  From August 2006

through October 2006, I attended the Basic Postal Inspector Academy.  Starting October

2006, I was assigned to the Prohibited Mailings Illegal Narcotics Team.  Previous to that,

I was employed with the San Diego County Sheriff's Department for approximately three

and one-half years and with the San Diego State University Police Department for

approximately six years.  During that time, I was involved in several narcotics related

investigations.  I received training from the California Department of Justice Advanced

Training Center on Drug Identification & Influence, the California Narcotic Officers

Association on Drug Abuse Recognition, the Drug Enforcement Administration on Basic

Narcotic Investigations and the U.S. Postal Inspection Service which included instruction

regarding individuals using the U.S. Mails to transport controlled substances and

1

proceeds from the sale of controlled substances as well as the use of Postal Money

Orders to launder the proceeds of controlled substances transactions.

4.    Based upon my training, experience and discussions with other Postal Inspectors and

agents I know the following in summary:

a.    Individuals who regularly handle controlled substances leave the scent of

controlled substances on the currency and other items they handle.  Proceeds

from these sales are often stored in close proximity to the controlled substances,

thereby transferring the odor of the controlled substance to the monies and

packaging materials.  Narcotic canines are trained to alert on the scents of

controlled substances.

b.    The Postal Inspection Service and DEA Narcotic Task Force Commercial

Interdiction Team have worked aggressively to limit the use of shipping

companies and the U.S. Mail for the transportation of controlled substance

through these companies.

c.    Ongoing investigations have disclosed that Priority/overnight and "two day"

parcel deliveries have become a method of choice by drug dealers for the

transportation of contraband or the proceeds of narcotic sales.

d.    I know that Southern California is a source region for controlled substances

being mailed throughout the United States.  The proceeds from these narcotic

transactions are then transported via the U.S. Mails and other communication

facilities back to Southern California, the source of the controlled substances.

2

e.      Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1.      Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2.      "Express Mail" is usually requested to be delivered by the next day's mail.

3.      "Priority Mail" is usually requested to be delivered within two days of mailing.

4.      Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

5.      Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

6.      While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7.      "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

f.      Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g.      Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h.      Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i.      I also know that drug related parcels containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor of controlled substances.

j.      I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage.  Insurance for Priority Mail may be purchased at an additional fee.  Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

5.      The information in this affidavit is based upon information I have gained from my

investigation, my personal observations, my training and experience as well as

information related to me by other Postal Inspectors and law enforcement officers. Since

this affidavit is being submitted for the limited purpose of securing a search warrant, I

have not included each and every fact known to me concerning this investigation.


6.      On or about 10-29-07, I received information from Postal Inspector W. Martin in

Nashville, TN regarding Express Mail label #EB451910240US. The parcel was addressed

to "Mr. Tony Smith 3820 ridgeside drive Nashville TN 37207". The parcel had the return

address information of "570 F ST Chula Vista CA 91910". The parcel had been mailed

from the College Grove Post Office (92195). Inspector Martin was suspicious of the

subject parcel because the weight on the Express Mail label was 14 pounds and the

parcel was being mailed to Tennessee from a source city for narcotics.


7.      On 11-05-07, I was conducting a routine interdiction at the Midway Processing &

Distribution Facility in San Diego, CA. I came in contact with Express Mail Parcel

#EB451916865US addressed to "C. Riley/Hewittson 708 Killian St Apt. #2 Atlanta GA

30312". The parcel had the return address information of "Mr. Paterson 570 F ST Chula

Vista CA 91910". The parcel was wrapped in brown paper. Written on the brown paper

was "Happy Annivery 50th!" "Way 2 Go". The parcel weighed 9 pounds. I became

suspicious of the parcel for the following reasons: The return address was 570 F ST

Chula Vista, CA 91910. The Express Mail label was handwritten. The size, shape and

appearance of the parcel was consistent with parcels previously identified in other

investigations that contained controlled substances. The zip code listed for the sender

(91910) was different from the zip code for the office of mailing (92195). I know from

previous investigations that drug traffickers will sometimes attempt to conceal their

identities by mailing a parcel at a different post office than what they list on the return

5

address.  The parcel was mailed from the College Grove Post Office (92195), the same Post Office Express Mail Parcel #EB451910240US was mailed from.  A search of an address database system showed the name Cavonna Riley to be at the return address of 570 F ST Chula Vista CA 91910.  Further follow-up investigation with the post office revealed Cavonna Riley received mail at that address.  A search of an address database system showed the last name of Hewitt to be associated with the recipient address of 708 Killian St Apt. #2 Atlanta GA 30312.

8.     On 11-05-07, during the routine interdiction at the Midway Processing & Distribution Facility in San Diego, CA, I also came in contact with Express Mail Parcel #EB451916843US addressed to "Guest: CaVonna Riley Ramada Atl Airport South 1551 Phoenix Blvd College Park GA 30349".  The parcel had the return address information of "Mrs. Peterson 2922 Massachusetts Ave Lemon Grove CA 91945".  The parcel weighed 10 pounds.  I became suspicious of the parcel for the following reasons:  The parcel was also wrapped in brown paper.  The Express Mail label was handwritten.  The writing on the Express Mail label looked similar to the writing on Express Mail label #EB451916865US.  The size, shape and appearance of the parcel was consistent with parcels previously identified in other investigations that contained controlled substances. The zip code listed for the sender (91945) was different from the zip code for the office of mailing (92195).  I know from previous investigations that drug traffickers will sometimes attempt to conceal their identities by mailing a parcel at a different post office than what they list on the return address.  The parcel was mailed from the College Grove Post Office (92195), the same Post Office Express Mail Parcel #EB451910240US and Express Mail Parcel #EB451916865US were mailed from.  A search of an address database system showed the name Cavonna Riley to be at the return address of 2922 Massachusetts Ave Lemon Grove, CA 91945.  Further follow-up investigation with the post office revealed Cavonna Riley changed her mailing address from 2922

6

Massachusetts Ave Lemon Grove, CA 91945 to 570 F ST Chula Vista CA 91910 effective 05-31-07.

9.    On 11-06-07, Express Mail Parcel #EB451916843US and Express Mail Parcel #EB451916865US were presented to a drug detection canine. The drug detection canine alerted to the presence of the odor of controlled substances for Express Mail Parcel #EB451916843US but not Express Mail Parcel #EB451916865US.

10.    On 11-06-07, I obtained the counter surveillance video for the dates of 11-05-07 and 10-09-07 from the College Grove Post Office. The date of 11-05-07 captured the mailing of Express Mail Parcel #EB451916843US and Express Mail Parcel #EB451916865US. The date of 10-09-07 captured the mailing of Express Mail Parcel #EB451910240US. I later viewed the videos. The mailer of Express Mail Parcel #EB451916843US and Express Mail Parcel #EB451916865US that took place on 11-05-07, was a black female adult wearing a black cap, green jacket and black pants. The mailer of Express Mail Parcel #EB451910240US that took place on 10-09-07 was a black male adult with black hair, wearing a green shirt and shorts. The parcel also appeared to be wrapped in brown paper.

11.    On 11-06-07, I called the Ramada Inn in College Park, GA and asked if there was anyone named Cavonna Riley that was currently checked in. The operator said there was a Cavonna Riley staying there and connected me to Riley's room. Acting in an undercover capacity as a postal employee, I spoke with a female who identified herself to me as Cavonna Riley. I asked Riley if she was expecting an Express Mail package from the San Diego area to be delivered to her at the Ramada Inn. Riley said there was a package that was supposed to be there but had not arrived. I asked Riley if she was expecting the additional Express Mail package to 708 Killian St Apt. #2 Atlanta, GA. Riley

7

said she was not expecting that parcel. In attempts for clarification, I again asked Riley if she was expecting the package coming to the Ramada Inn and not the other package. Riley said, "I believe so". I asked Riley if she knew what was inside the package that was mailed to her at the Ramada Inn. Riley said she thought it was a small anniversary gift card and money. It should be noted the writing "Happy Annivery 50th!" "Way 2 Go" was written on Express Mail Parcel #EB451916865US addressed to "C. Riley/Hewittson 708 Killian St Apt. #2 Atlanta GA 30312" with the return address information of "Mr. Paterson 570 F ST Chula Vista CA 91910". This was the Express Mail parcel Riley said she was not expecting. I asked Riley for consent to open the packages. Riley said she did not know how she could give consent to packages that were addressed to her from someone she did not know. I told Riley she had already told me she was expecting the one package and now she was stating she was receiving packages from someone she did not know. Riley stated "Someone told me there might be something coming". Riley refused to give me consent to open the packages and said they did not belong to her.

12.     On 11-07-07, I received information from Inspector Martin about two additional Express Mail labels that were located with the return address of 570 F ST Chula Vista, CA 91910. The recipient address was to an Extended Stay America in Nashville, TN. Further investigation revealed the Extended Stay America to be in close proximity to the Nashville Airport. Inspector Martin also informed me he located twenty-four additional Express Mail labels that were mailed to various locations in the Nashville, TN area with the return addresses listed in the 2800 and 2900 blocks of Massachusetts Ave, Lemon Grove, CA.

13.     On 11-07-07 Federal Search Warrant #07MJ2618 was obtained for Express Mail Parcel # EB451916843US. The Search Warrant was issued by U.S. Magistrate Judge Cathy Ann Bencivengo.     After executing the search warrant on Express Mail Parcel #

8

EB451916843US, the parcel was found to contain two bundles of Marijuana that weighed approximately 3,628.5 grams.

14.    On 11-07-07 Federal Search Warrant #07MJ2619 was obtained for Express Mail Parcel # EB451916865US.  The Search Warrant was issued by U.S. Magistrate Judge Cathy Ann Bencivengo.   After executing the search warrant on Express Mail Parcel # EB451916865US, the parcel was found to contain two bundles of Marijuana that weighed approximately 3,543.2 grams.

15.    On 12-04-07, I along with other Postal Inspectors was conducting surveillance of 570 F Street, Chula Vista, CA 91910.  I observed a black female adult, matching the physical description of Cavonna Riley, emerge from the garage area of the residence.  The female was holding what appeared to be a brown colored parcel.  Inspector Kelly observed the female place the parcel inside her vehicle.  We followed the female to the Horton Plaza Post Office.  While inside the Post Office, I observed the female turn the parcel over to the postal clerk and pay the postal clerk for the mailing of the parcel.  I then observed the female leave the Post Office.

16.    After the female left the Post Office, I took custody of the parcel.  The parcel weighed 10 pounds.  I became further suspicious of the parcel for the following reasons:  The parcel was wrapped in brown paper, which was similar to the wrapping of Express Mail Parcel #EB451916865US and Express Mail Parcel #EB451916843US.  The Express Mail label was handwritten.  The size, shape and appearance of the parcel was consistent with parcels previously identified in other investigations that contained controlled substances. The zip code listed for the sender (91910) was different from the zip code for the office of mailing (92101).   I know from previous investigations that drug traffickers will sometimes attempt to conceal their identities by mailing a parcel at a different post office

than what they list on the return address. I searched an address database system for the return address of "225 Bay Blvd Chula Vista CA 91910" and found the address to be a valid street address. The address was listed as a hotel or motel.

17. On 12-05-07, Inspector Tanael met with Officer Michael Anderson and his trained narcotic detection canine Kilo, at the Midway Processing & Distribution Facility located in San Diego, CA. Officer Anderson and Kilo conducted an exterior examination of subject Express Mail Parcel # EB794472650US. When Kilo examined the parcel described above, Officer Anderson told Inspector Tanael that Kilo alerted to the presence of the odor of controlled substances. Inspector Tanael then secured the subject parcel and turned it over to me pending an application for a search warrant. The qualifications of canine Kilo are contained in Attachment A.

18. In addition, Detective Steve A. Sloan, Dog Trainer for the San Diego Police Department Canine Training Section, certifying official for the California Narcotic Canine Association and a court recognized narcotic detection canine expert, told me the following in summary:

    a.    Because of the absorption of the odor of controlled substances and the narcotics detection canine's inherently keen sense of smell, the narcotic detection canine will continue to alert on the container or item depending on the length of exposure to the controlled substances, the specific controlled substance and the ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been Detective Sloan's experience that a properly trained narcotic detection canine will not alert to all currency. Detective Sloan said the most relevant factor regarding alerts on currency is the threshold amount of narcotic odors that is set in the training of the narcotics detection canine. It is Detective Sloan's experience that canine

training must include the establishment of a lower threshold of approximately one gram of a controlled substance or more to ensure the canine is alerting to more than the average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These substances have also included food, plastic bags and wrap, tape, controlled substance adulterants, circulated and non-circulated U.S. currency. Proofing is a method used in training to ensure the canine alerts only to odors for which it is trained to alert.

19.    Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the Express Mail parcel as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Kelly E. Cain
Postal Inspector

Sworn to before me, and subscribed in my presence, on this

_5th_ Day of _December_, 2007.

U. S. Magistrate Judge

11

ATTACHMENT A
For
Michael J. Anderson and K-9 Kilo

Michael Anderson has been a Probation Officer for the San Diego County Probation Department for the past 17 years and is currently assigned to the East County Gang Task Force. Officer Anderson is also the Probation Department's Narcotic K-9 handler. In addition, Officer Anderson assists the Jurisdictions Unified for Drug and Gang Enforcement (J.U.D.G.E.), San Diego Integrated Narcotics Task Force (NTF), Field Action Specialty Team (FAST), and local Post Offices as well as the San Diego Police Department in searches for narcotics. Officer Anderson is a member of the California Narcotics Officers Association as well as the California Narcotic Canine Association.

On July 2003, he was assigned the responsibility of training and working with the San Diego Probation Department's narcotic K-9, Kilo, ID#K1. Between July and August 2003, San Diego Police Officer Steve Sloan trained Kilo and Officer Anderson in the area of narcotics. Officer Anderson and Kilo have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Kilo's alert consists of physical and mental reactions, which include a heightened emotional state and coming to a complete "sit" when his physical position allows.

On August 16, 2003 after 40 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine, California Narcotics Canine Association certifying official Tom Iverson certified Kilo as 100% proficient in the detection of the same.

On November 14, 2003, Kilo was re-certified by California Narcotics Canine certifying official Tom Moore.

On 5/03/2005, Kilo was re-certified by California Narcotics Canine certifying official Mary Bohnnett.

On 3/31/06, Kilo was re-certified by California Narcotics Canine certifying official Joe Priebe.

On 12/1/06, Kilo was re-certified by California Narcotics Canine certifying official Joe Priebe.

Prior to Officer Anderson and Kilo becoming certified as a team, Kilo received 100 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine by California Narcotics Canine Association certifying official Mary Bohnnett. To date, Kilo has completed a total of 475 hours of training.